**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | Case Number:  22-40031-TC |
| **JEREMY DAYTON CLARK**, | |
| Defendant. | |

## MEMORANDUM AND ORDER

On September 16, 2022, Defendant Jeremy Clark filed a Motion to Modify Conditions of Pretrial Release. ECF No. 19. On September 22, 2022, the Government filed its Response to the Motion, opposing Defendant's request to modify conditions. ECF No. 20. On September 23, 2022, Defendant filed his Reply. ECF No. 21. For the reasons discussed below, the Motion is denied.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2022, a grand jury in the District of Kansas returned a five-count indictment charging Defendant with: three counts of sexual exploitation of a minor for alleged receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2)(A) and (B) (Counts 1-3); one count of sexual exploitation of a minor for alleged distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2)(A) and (B) (Count 4); and sexual exploitation of a minor for alleged possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 5). ECF No. 1.

On June 2, 2022, Defendant appeared for his Initial Appearance and Arraignment. ECF No. 3. At that time, a detention hearing was scheduled for the next day. ECF No. 5.

Prior to the June 3rd detention hearing, U.S. Probation circulated the Pretrial Services Report. The Pretrial Services Report reflected that Defendant's proposed release residence is 0.2 miles from the Prairie Park Nature Center, a popular destination for children in Lawrence, and 0.8 miles from Prairie Park Elementary School. The Pretrial Services Report additionally raised serious concerns about Defendant's mental health. Defendant reported that he was physically and verbally abused by his father until he was approximately 18 years old. In 2020, he was diagnosed with depression and bipolar disorder. Defendant has been prescribed medication including Depakote, a mood stabilizer, and Risperidone for paranoia and impulse control.

On June 3, 2022, Defendant appeared for a detention hearing before the undersigned Magistrate Judge during which time the Government informed the Court it was no longer requesting detention after review of the Pretrial Services Report as well as the proposed release conditions. ECF No. 8; ECF No. 20 at 4. At the hearing, Defendant was asked to raise any concerns he had with regard to the proposed conditions of release. Defendant's counsel raised two concerns: 1) the proposed curfew; and 2) location monitoring. The first concern is not raised in Defendant's Motion, but the second is. Defendant argued that the mandatory conditions codified in the Adam Walsh Act, 18 U.S.C. § 3142(c)(1)(B), were unconstitutional as applied to Defendant in that they violated his due process protections.

On the record at the detention hearing, the Court directly addressed why location monitoring was necessary in this specific case. The Court stated that apart from any conditions recommended by U.S. Probation, such as the inclusion of the Adam Walsh Act conditions, the Court stated that after reviewing the Pretrial Services Report, the Court had independently determined that "for this specific case," location monitoring was necessary. The Court stated that because of the information contained in the Pretrial Services Report, including that Defendant's

2

residence is very close to both a popular park and an elementary school, location monitoring was a necessary condition in this case to ensure the safety of children who may be near the park in that neighborhood.

The Court additionally addressed Defendant's constitutionality objections to the automatic inclusion of all of the Adam Walsh Act conditions. The Court said that may be an issue to raise in a separate case, but the issue was not relevant to this case because the unique facts of this case required the imposition of location monitoring.

The Court released Defendant on certain conditions, including that Defendant submit to location monitoring as directed by U.S. Probation. ECF No. 9 at 2, ¶ (7)(q)(i). The Court also required that Defendant not possess any form of pornographic material, not possess any Apple products or devices, and abide by U.S. Probation's Internet Monitoring Program, which includes restrictions related to computer and internet usage, among other things. *Id.* at 3, ¶ 2, ¶ (7)(t), (w), (x). U.S. Probation placed an ankle monitor on Defendant upon his release, with the cost assessed to Defendant of more than $100 per month. ECF No. 19 at 2.

Defendant filed his Motion on September 16, 2022. *Id.* In response to the Motion, the Government provided additional details concerning the charged offenses and Defendant's other conduct. Specifically, according to the Government, law enforcement executed a search warrant on Defendant's residence on January 24, 2020, during which time law enforcement seized electronic devices from Defendant's bedroom. ECF No. 20 at 2. Law enforcement became aware of Defendant because of a tip provided to the National Center for Missing and Exploited Children that an individual was sharing a video of an approximately 6-year-old girl performing oral sex on an adult male. The IP address of the user's computer was tracked to Defendant's address. ECF No. 20 at 2.

Law enforcement spoke with Defendant during the search, and according to the Government, after waiving his *Miranda* rights, Defendant admitted to viewing child sexual abuse material ("CSAM") since he was in high school and had viewed it as recently as the day prior to the interview. *Id.* According to the Government, Defendant acknowledged that he had saved thousands of videos on his laptop and flash drive and admitted to chatting with girls he believed were under the age of 18. *Id.* at 3. The Government states that Defendant also informed law enforcement that this included a 16-year-old girl who sent him nude photos and a 13-year-old girl who sent a video of herself masturbating, which Defendant saved. *Id.* The Government states that a subsequent forensic examination confirmed those statements and additionally located thousands of CSAM images on Defendant's devices, including screenshots of conversations on Omegle, which the Government describes as a video chat site that pairs random users to chat online or by text, video, or both. *Id.* at 2-3.

In a 34-minute video of a screen capture of an Omegle conversation between Defendant and an individual who said she was 13 years old, the Government states that the Defendant "tells the girl to 'pull those tits out and finger fuck yourself now.'" *Id.* at 3. According to the Government, the girl is then seen following the instructions. *Id.* During this chat with the young girl, Defendant subsequently played various CSAM videos involving small children. *Id.*

## II.   ANALYSIS

Pursuant to 18 U.S.C. § 3142(c)(3), the Court "may at any time amend the order to impose additional or different conditions of release." Defendant asks the Court to modify only two conditions of his release: 1) eliminate location monitoring; and 2) eliminate Defendant's obligation to pay costs associated with location monitoring. ECF No. 19 at 4 n.13. In support of this request, Defendant effectively asks the Court to determine the constitutionality of the so-called Adam

Walsh Act conditions. Defendant argues that "[a]s applied to Mr. Clark, those mandatory restrictions, untethered to any individual determination, are unconstitutional." *Id.* at 4.

As discussed below, Defendant raised nearly all of these same arguments during the detention hearing. Defendant had a full opportunity to raise his Constitutionality arguments, whether as to the face of the statute or the statute as applied to Defendant, and the Court directly addressed these arguments at the hearing. Moreover, the Court explained its reasons for why location monitoring was specifically needed in this case. In his Motion and in his Reply, Defendant includes exactly one sentence about this hearing: "Finally, we understand this Court's initial ruling on location monitoring." ECF No. 21 at 8. While Defendant claims the "[G]overnment never links the need for Mr. Clark's location monitoring with any danger that he may present," ECF No. 21 at 5, Defendant wholly ignores that the Court articulated that link during the detention hearing. Defendant never addresses the reasons provided by the Court during this hearing and nothing in Defendant's Motion or Reply merits a different decision now.

### A. CONSTITUTIONAL CHALLENGE

Defendant first raises arguments regarding the constitutionality of the Adam Walsh Act. Conspicuously, nowhere in Defendant's briefing does he allege that a magistrate judge can opine on the constitutionality of a federal statute. As the Chief Judge in this District has stated with regard to a similar challenge to the Adam Walsh Act, "the Court concludes that a constitutional determination is beyond the power granted to a magistrate judge by statute." *United States v. Blaser*, No. 19-10075-EFM, 2019 WL 3934802, at *2 (D. Kan. Aug. 20, 2019).

In an attempt to avoid this roadblock, Defendant alleges that he does "not challenge the facial constitutionality" of the Adam Walsh Act, ECF No. 19 at 4 n.12, but instead alleges that "the statute as applied to Mr. Clark is unconstitutional." *Id.* at 19. Defendant argues that "[t]he

5

mandatory charge-based conditions under Adam Walsh are antithetical to the Bail Reform Act's 'least restrictive' individualized conditions, which is the key to the Act's procedural constitutionality." ECF No. 19 at 4.

Again, this is not the first time a defendant has attempted to allege a conflict between the Bail Reform Act and the Adam Walsh Act. This exact issue was addressed in *Blaser* and Defendant fails to meaningfully address this analysis:

> The Adam Walsh Amendments are not abandoning the principles of the Bail Reform Act. Instead, they supplement them and designate certain crimes for which mandatory conditions of release are required. Because the Adam Walsh Amendments were enacted after the Bail Reform Act and enacted with the purpose of amending the Bail Reform Act, courts must construe them in harmony. [T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand. Furthermore, the Court cannot substitute its opinion for that of a congressional directive. Here, Congress determined that mandatory conditions were necessary and required for certain defendants accused of certain crimes. This requirement does not deprive a defendant of procedural due process. Instead, it simply directs the court to certain mandatory conditions that must be fashioned in the least restrictive manner. Thus, courts can (and should) construe the Adam Walsh Amendments to the Bail Reform Act to work in harmony with each other.

*Blaser*, 2019 WL 3934802, at *5 (internal quotation marks and footnotes omitted).

Even assuming this Magistrate Judge could directly opine on the constitutionality of the Adam Walsh Act, the Court need not reach that issue. As clearly stated on the record at the detention hearing, the Court ordered location monitoring in this case *not* because it was required by the Adam Walsh Act, but because the unique facts in this case require this specific condition of release to reasonably ensure the safety of the community.[1]

---

[1] Although Defendant argues that "location monitoring is unnecessary to assure his appearance in court," ECF No. 19 at 6, the Court did not and does not find that location monitoring is necessary to assure Defendant's appearance. As the Court stated at the hearing, location

B.     **LEAST RESTRICTIVE CONDITION**

From reviewing Defendant's Motion and Reply, it does not appear that prior to filing this Motion, Defendant reviewed the recording of the detention hearing. At no point does Defendant address the specific reasons the Court gave on the record for the necessity of location monitoring in this case. While the Court has discretion to modify conditions, a motion to modify should not be a vehicle for re-raising factual or legal issues that were directly discussed at the detention hearing. Nonetheless, the Court will address the arguments previously raised by Defendant and address the few new arguments below: whether the underlying facts merit the imposition of location monitoring; temporal arguments regarding the timing of the indictment and Defendant's compliance with conditions while on release; and Defendant's cited cases. None of these arguments merit a reconsideration of the Court's decision to order location monitoring as a condition of Defendant's release.[2]

---

monitoring was a necessary condition because of the unique risk of danger Defendant poses to the community.

[2]     Other than alleging that paying for location monitoring is a "growing financial burden," Defendant makes no independent argument for why he should not be required to pay for location monitoring if it is indeed necessary. Defendant cites to no case law in which any defendant is excused from the condition at issue here, which is Defendant must "[p]ay all or part of the cost of location monitoring based upon your ability to pay as determine by the pretrial services or supervising officer." ECF No. 9 at 2. When location monitoring is ordered by the court, partial payment is routinely ordered. *See, e.g., United States v. Williams*, No. 13-20043-02-JWL, 2020 WL 1888850, at *2 (D. Kan. Apr. 16, 2020) (ordering that defendant "shall pay all or part of the cost of participation in the location monitoring program as directed by the court and/or probation officer."). While Defendant argues that 18 U.S.C. § 3142 "does not appear to authorize the Court to impose a financial requirement on the supervised person to pay for the cost of supervision," ECF No. 19 at 4 n.13, that statute does recognize that a court can "impose a financial condition" so long as that condition does not "result[] in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). Defendant makes no particularized arguments that pretrial services has miscalculated his ability to pay, that he actually is unable to pay the amount attributed to him each month or that this financial condition may result in Defendant's pretrial detention.

7

With regard to the underlying facts in this case, incredibly, Defendant argues that "[i]t is important that the charges against Mr. Clark are all computer-based. There are no allegations of contact or in-person conduct." ECF No. 19 at 7. While there is no doubt that a crime involving a defendant physically touching a minor in person is of serious concern, Defendant's conduct is *not* fairly characterized as passive or contactless. As detailed in the Government's response, Defendant admitted that he has actively sought out and chatted with young girls under the age of 18. As part of these chats, Defendant has received nude photos of a 16-year-old girl and a video of a 13-year-old girl masturbating. In a 34-minute video involving Defendant, Defendant directed a girl who identified herself as being a 13-year-old girl "to 'pull those tits out and finger fuck yourself now.'" ECF No. 20 at 3. According to the Government, the girl followed these instructions. *Id.*

These allegations underscore the risk Defendant poses to vulnerable children. He is not alleged to be a passive recipient of child pornography but is instead alleged to have targeted young children and talked these children into acting out his desires on video. This addiction to sexual abuse content involving children is not a recent problem in his life. Defendant is 30 years old, and he admitted that he began viewing child sexual abuse material in high school and his review of this type of material continued until "the day prior" to when the search warrant was executed. ECF No. 20.

The conditions of release entered in this case directly prohibit Defendant from possessing pornography and seek to eliminate Defendant's access to computers or other avenues to the internet. ECF No. 9. But the risk he poses to the community is not wholly addressed by those conditions. Defendant has admitted to a child pornography addition that dates back at least 12 years. There is no reason to assume that his alleged attraction to young children has disappeared

or that his desire to have young children act out his sexual desires has ceased. He has been diagnosed with bipolar disorder and has been prescribed medication designed to stabilize moods and to address concerns including paranoia and impulse control. Because of the location of his home, he has ready access to two locations, a nature center and a grade school, at which young children gather. As stated on the record at the hearing, the undersigned Magistrate Judge is familiar with this nature center and Defendant's proximity to this nature center in particular raises unique and specific risks.[3]

Location monitoring is the least restrictive condition to reasonably assure community safety. It provides a deterrent to Defendant from approaching locations at which he may have unsupervised contact with children, whether those locations are within his neighborhood or elsewhere. While Defendant claims that location monitoring "does nothing to hinder his access to electronics," ECF No. 19 at 7-8, it again provides a deterrent to Defendant from approaching locations that may provide him with access to technology from which he could continue to have unsupervised contact with children on the internet or to continue his decade-plus review of child sexual abuse content. It will also allow U.S. Probation to monitor his location to ensure that he is not approaching locations at which he may have unsupervised contact with children, whether in person or via technology. By walking out the front door of his house and walking just 0.2 miles, he could have immediate unsupervised contact with children, which U.S. Probation would never know without location monitoring. Because of the nature of the specific allegations against him, the unique risks related to his mental health challenges—including that he has been prescribed

---

[3] The Nature Center is a "100-acre nature preserve on the east side of Lawrence. The preserve incorporates wetlands, woodlands, and prairie habitats and a five-acre lake." *See* https://lawrenceks.org/lprd/ppnc/. The Nature Center encourages preschool and grade school field trips, offers badge programs for brownies and girl scout troops, and has a wide variety of programs encouraging children to actively explore the 100 acres. *See generally id.*

medication to address a possible lack of impulse control—and his specific proximity to locations at which children will be present, location monitoring is necessary.

Defendant's other release conditions do not obviate the need for electronic monitoring. These other conditions work together with location monitoring to "effectuate and enforce" each other "by removing opportunities for undetected prohibited contact. . . . Under the circumstances, these conditions serve an important community-safety interest while satisfying the least-restrictive-means requirement." *United States v. Deppish*, 554 F. App'x 753, 755 (10th Cir. 2014).

Defendant makes two temporal arguments for why location monitoring should be removed. First, Defendant alleges that the Government's investigation took two years and "[d]uring that two-year lapse, there is no evidence of any wrongdoing by Mr. Clark." ECF No. 19 at 7. Defendant also alleges that he was been "without incident" for the four months since the Court ordered the conditions of his release. ECF No. 21 at 8. Defendant's compliance with the conditions of his release may well be because of the deterrent effect caused by the location monitoring. At the detention hearing, the Court was aware of the timing of the alleged conduct and the timing of the Indictment and took that into account when finding that Defendant could be released—back to the same home in which he lived while he allegedly committed these crimes—subject to the condition of location monitoring. The additional facts detailed by the Government in its response brief underscore why Defendant continues to pose such a serious risk to the community, requiring the continuation of location monitoring.

Finally, Defendant's cited cases do not compel a different conclusion. These cases largely stand for the unremarkable proposition that location monitoring can be an appropriate condition of release if based on the unique facts in any particular case. In the cited cases that did not require location monitoring, the decision was based on facts remarkably dissimilar to what is at issue here.

For example, Defendant relies heavily on *United States v. Diaz*, No. 17-CR-227(VEC), 2018 WL 5282882 (S.D.N.Y. Oct. 24, 2018). Diaz was charged with a failure to register as a convicted sex offender, which the Court characterized as a "low-level offense that, upon conviction, will result in a relatively short term of incarceration (if any)." *Id.* at *3. The defendant had been convicted of the underlying crime 18 years before. *Id.* In sharp contrast to the Government's arguments here as to Defendant's unique danger to the community, the "Government [did] not argued that Diaz poses a danger to any person or to the community." *Id.* That court additionally noted that no hearing addressed whether location monitoring was necessary based on the unique facts, as opposed to merely assuming the conditions must be imposed because of the Adam Walsh Act. *Id.* at *4 (stating that despite multiple hearings, "none of those hearings assessed whether a curfew and electronic monitoring were appropriate conditions; rather, each hearing began with the assumption that those conditions had to be imposed because they are mandatory under the statute."). It is unsurprising that in the absence of any argument by the Government that a defendant poses a risk to the community and the absence of any record of that defendant failing to appear that a court could conclude that location monitoring was unnecessary. Those are not the facts here.

### III.   CONCLUSION

For the reasons discussed herein, Defendant's Motion to Amend Conditions of Pretrial Release is **DENIED**.

Dated: September 30, 2022, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge

11